JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**13 CV 3942**

------------------------------------------------------------X

OSCAR OCASIO and JULIO SUAREZ,

                            Plaintiffs,

-against-

THE CITY OF NEW YORK; NEW YORK POLICE
OFFICER JOSE CINTRON, shield number 17999, in
his individual and official capacity; NEW YORK
POLICE OFFICER ELLINES JIMENEZ, shield
number 005259, in her individual and official
capacity; NEW YORK POLICE OFFICER GABRIEL
BAAITH, shield number 25605, in his individual and
official capacity; "JOHN and/or JANE DOES" Nos.
1,2,3, etc. (whose identity is unknown but who are
known to be personnel of the New York City Police
Department), all of whom are sued individually and in
their official capacities,

                            Defendants.

------------------------------------------------------------X

**COMPLAINT**

**Jury Trial Demanded**



       Plaintiffs OSCAR OCASIO and JULIO SUAREZ by and through their attorneys Beldock

Levine & Hoffman LLP, for their complaint against the defendants named above allege as

follows:

## PRELIMINARY STATEMENT

       1.       Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 and 1988 for

violations of rights guaranteed to the plaintiffs by the Fourth and Fourteenth Amendments to the

United States Constitution, and for violations of the laws of the State of New York by defendants

THE CITY OF NEW YORK ("CITY"), and New York City Police Officers JOSE CINTRON

("CINTRON"), shield number 17999, New York City Police Officer ELLINES JIMENEZ

("JIMENEZ"), shield number 005259, New York City Police Officer GABRIEL BAAITH

("BAAITH"), shield number 25605, and "JOHN and/or JANE DOES" Nos. 1,2,3, etc.

## JURISDICTION

1.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

2.     Plaintiffs further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

2.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiffs' claims took place.

## JURY DEMAND

3.     Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## PARTIES

4.     Plaintiff OSCAR OCASIO ("OCASIO") is a Latin American man and a citizen of the United States. He was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

5.     Plaintiff JULIO SUAREZ ("SUAREZ") is a Latin American man and a citizen of the United States. He was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

6.     Defendant CITY is a municipal entity created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain a

police department, the New York Police Department (the "NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks and obligations incidental to the maintenance of a police force and the employment of police officers. The NYPD's operations include the operations described herein.

7.      Defendant Police Officers CINTRON, JIMENEZ, BAAITH, JOHN and/or JANE DOES Nos. 1, 2, 3, etc., are NYPD Police Officers who unlawfully detained, frisked, and arrested plaintiffs without suspicion of any illegal activity, lodged false criminal charges against them, and caused them to be strip searched and maliciously prosecuted.

8.      Defendant Police Officers CINTRON, JIMENEZ, BAAITH, JOHN and/or JANE DOES Nos. 1, 2, 3, etc., acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

9.      Defendant Police Officers CINTRON, JIMENEZ, BAAITH, JOHN and/or JANE DOES Nos. 1, 2, 3, etc., violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

10.      Plaintiffs personally served Notices of Claim upon the City on September 5, 2012, within ninety days of the events giving rise to their claims. Plaintiff SUAREZ appeared and was questioned at an administration hearing pursuant to New York General Municipal Law Section 50-h on May 1, 2012. Plaintiff OCASIO is scheduled to appear at an administration hearing

pursuant to New York General Municipal Law Section 50-h on July 15, 2013. The CITY and the Comptroller have neglected and refused to adjust or pay plaintiffs' claims

11.     This action is filed within one year and ninety days of the events giving rise to plaintiffs' claims.

## FACTUAL ALLEGATIONS

12.     Plaintiffs OCASIO and SUAREZ both participate in the care and maintenance of a neighborhood community garden located in the lot between 2307 and 2317 Morris Avenue in the Bronx ("the community garden").

13.     The community garden contains a shed and various plants and animals, including dogs and chickens.

14.     On or about the afternoon of Friday, June 8, 2012, OCASIO was tending to plants in the community garden.

15.     While OCASIO was gardening, he was approached by Fredericka Reid and Anthony who asked OCASIO about some puppies in the community garden that were for sale.

16.     While OCASIO was talking to Anthony and Fredericka, SUAREZ arrived at the community garden via a taxi.

17.     SUAREZ waved hello to everyone and proceeded to the shed at the back of the community garden and went inside.

18.     Just after SUAREZ arrived, a person named Cano arrived at the community garden; Cano approached Fredericka and spoke to her.

19.     Fredericka and Cano then proceeded to exit the community garden together.

4

20.     As Fredericka and Cano exited the community garden they were stopped by two police officers, one of whom was a short, light-skinned Latin American and the other was a tall African American.

21.     The officers placed Fredericka and Cano against the fence outside the community garden and searched them.

22.     Upon information and belief, the police officers found a crack pipe in Fredericka's pocket.

23.     The police officers released Cano and kept Fredericka in custody.

24.     The Latin American officer then entered the community garden and asked OCASIO and Anthony where the "other guy" was.

25.     OCASIO looked to the shed and called SUAREZ by his first name, Julio.

26.     The officer then proceeded towards the shed calling, "Julio."

27.     SUAREZ came to the doorway of the shed and recognized the police officer as Jose CINTRON.

28.     In October, 2010, SUAREZ's brother, Angel Suarez, had filed a civil complaint in the Bronx County Supreme Court against Officer CINTRON and other police officers for, among other things, being falsely arrested and beaten up at the 46th precinct.  Angel Suarez's case against Officer CINTRON is currently pending in Bronx Supreme Court.

29.     Since his brother's lawsuit, Julio SUAREZ has been stopped on the street and searched by Officer CINTRON several times without reasonable suspicion.

30.     When Officer CINTRON got to the shed he asked SUAREZ if he could search him.

31.     SUAREZ said he could and asked CINTRON if he had done something wrong.

5

32.     Officer CINTRON responded in sum and substance that it was "nothing" and that he just wanted to search SUAREZ.

33.     Without cause, Officer CINTRON then searched SUAREZ.

34.     While patting SUAREZ down, Officer CINTRON stuck his hand in SUAREZ's pocket and pulled out SUAREZ's money, which was $190 in United States currency.

35.     Officer CINTRON held up SUAREZ's money, called over to the other officer who was still at the fence with Fredericka, and yelled "I got the money."

36.     Officer CINTRON then spun SUAREZ around and put handcuffs on SUAREZ.

37.     SUAREZ told Officer CINTRON that he had done nothing wrong and asked why he was being arrested.

38.     Officer CINTRON replied, "You know what you did."

39.     Officer CINTRON then dragged SUAREZ outside the community garden, placed SUAREZ against the fence, and called for back-up on his police radio.

40.     SUAREZ again asked Officer CINTRON why he was being arrested and said that if he was being arrested just for having money on him, Officer CINTRON would have to arrest everyone.

41.     SUAREZ also said to Officer CINTRON that CINTRON was doing this because CINTRON had a problem with his brother.

42.     Officer CINTRON replied in sum and substance, "You know the game: cat and mouse."

43.     SUAREZ was placed in a police van while still in handcuffs.

44.     Without cause, Officer CINTRON approached OCASIO and Anthony and searched them.

45.     While Officer CINTRON was searching OCASIO, he stuck his hand in OCASIO's pocket and pulled out OCASIO's money, which was $580 in United States currency.

46.     Officer CINTRON then told OCASIO that he was under arrest and put him in handcuffs.

47.     Additional police officers began arriving in cars and vans.

48.     Upon information and belief, Officers JIMENEZ and BAAITH were among the officers that responded to Officer CINTRON's call for back-up.

49.     OCASIO and Anthony were then placed in another police van.

50.     Anthony was later charged by Officer JIMENEZ with criminal trespass in the third degree, even though the community garden was not then enclosed in a manner designed to exclude intruders.

51.     SUAREZ remained handcuffed in one van while OCASIO and Anthony remained handcuffed in another police van for thirty to forty minutes.

52.     While they were confined in separate police vans, SUAREZ and OCASIO both observed a large number of police officers, including, upon information and belief, defendants CINTRON, JIMENEZ and BAAITH, destructively and unreasonably searching the community garden.

53.     The search of the community garden was without probable cause or legal justification.

54.     The arrest of plaintiffs was without probable cause or other legal justification.

55.     Plaintiffs were taken to the NYPD's 46th precinct.

56.     At the 46th precinct, plaintiffs were individually taken to a bathroom and directed to take off all of their clothes and squat.

57.     Plaintiffs were then individually searched by a police officer, which included feeling on and around plaintiffs' anuses.

58.     The police officers did not recover any contraband from the strip search of either plaintiff.

59.     Plaintiffs were never told why they were being strip searched.

60.     The strip searches were illegal, unauthorized and contrary to applicable laws and regulations.

61.     After they were strip searched, plaintiffs were placed in a holding cell.

62.     SUAREZ informed police officers that he had an anxiety disorder, was suffering from an anxiety attack, and that he needed his medication.

63.     SUAREZ was told to wait for his arresting officer.

64.     OCASIO informed police officers that he was undergoing methadone therapy and that he needed his medication.

65.     OCASIO was told to wait and see his arresting officer.

66.     Plaintiffs never learned who their arresting officer was while they were at the 46th precinct.

67.     OCASIO began to suffer withdrawal symptoms from not having his methadone; SUAREZ's anxiety attacks became more severe.

68.     Plaintiffs told police officers that they needed to go to the hospital.

69.     Police officers told plaintiffs, in sum and substance, that if they went to the hospital they would never get to see a judge and that they would be better off just going through the system.

70.     Plaintiffs remained at the 46th precinct for several hours without their medication.

8

71.     While at the 46th precinct, plaintiffs were never permitted to use the bathroom and were denied their requests for food and water.

72.     Plaintiffs were transported from the 46th precinct to Bronx Central Booking in the early morning hours of June 9, 2012.

73.     While plaintiffs had been denied medication, food and water at the 46th precinct, they were offered cigarettes as they were being transported to Bronx Central Booking.

74.     At Bronx Central Booking OCASIO's withdrawal symptoms and SUAREZ's anxiety symptoms became more severe.

75.     Plaintiffs told police officers that they needed medication.

76.     Plaintiffs were not given any medication while at Bronx Central Booking.

77.     OCASIO suffered severe nausea, shakes, and vomited several times at Bronx Central Booking.

78.     SUAREZ suffered severe anxiety and had trouble breathing.

79.     Plaintiffs were arraigned on or about midnight on June 9, 2012.

80.     At arraignment, plaintiffs were each charged with Criminal Sale of a Controlled Substance in the 3rd degree (PL 220.39(1)), Criminal Possession of a Controlled Substance in the 3rd degree (PL 220.16(1)), and Criminal Possession of a Controlled Substance in the 7th Degree (PL 220.03).

81.     The charges against plaintiffs were based on the alleged observations of officers JIMENEZ and BAAITH that they had seen OCASIO direct Fredericka Reid to SUAREZ, that Fredericka had given SUAREZ a sum of currency for a small object, and that both Fredericka and SUAREZ were subsequently found to be in possession of what appeared to be crack cocaine.

82.     Upon information and belief, Officers JIMENEZ and BAAITH did not go to the community garden on the afternoon of June 8, 2012 until after Officer CINTRON called for back-up, and after plaintiffs had been taken into custody by CINTRON.

83.     Upon information and belief, the charges against plaintiffs were maliciously lodged by the individual defendants, were without probable cause, and were lacking in any legal justification.

84.     Plaintiffs pled "Not Guilty" at arraignment; OCASIO was released on his own recognizance and SUAREZ was held on $2000 bail.

85.     After being released, OCASIO went to the hospital for treatment of the withdrawal symptoms caused by his medication being withheld.

86.     After being remanded, SUAREZ was sent to Riker's Island and was not released on bail until June 11, 2012, at or about 5:00 p.m.

87.     When plaintiffs returned to the community garden, they found it in complete disarray from improper and unlawful conduct of the defendant police officers on June 8, 2012: everything had been turned inside out; several appliances had been destroyed, including a television, speakers, and the refrigerator holding OCASIO's methadone; chickens had been set loose from their pens and killed by a dog that had been set loose in the yard. Several people told plaintiffs that the police had spent several hours searching the community garden.

88.     Plaintiffs were thereafter compelled to return to Bronx County Criminal Court on defendants' baseless allegations on two occasions. On the second occasion, August 23, 2012, all charges against plaintiffs were dismissed by the Bronx County District Attorney's office.

89.     Plaintiffs were not engaged in any activities that were in violation of any law during the events described above and defendants had no probable cause to arrest plaintiffs.

90.     At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

91.     Defendants' conduct caused plaintiffs to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to their reputation, and deprivation of their constitutional rights.

### Retaliation for Prior Civil Rights Law Suit Against 46th Precinct Officers

92.     Officer CINTRON was involved in events in September, 2009, that gave rise to a state civil rights lawsuit brought by plaintiff SUAREZ's brother, Angel Suarez, against Officer CINTRON and other members of 46th precinct for, *inter alia*, false arrest, excessive force and malicious prosecution. The lawsuit was filed in Bronx County Supreme Court, Index Number 308715/10, and is currently pending.

93.     Upon information and belief, plaintiffs' unlawful arrest, detention and prosecution on June 8, 2012, were part of a continuing course of harassing, retaliatory conduct by Officer CINTRON and one or more other NYPD police officers for Angel Suarez's pending civil rights lawsuit.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights

94.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

95.     In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive plaintiffs of certain constitutionally protected rights under the

11

Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a.    the right to be free from unreasonable search and seizure of their persons;

    b.    the right to be free from arrest without probable cause;

    c.    the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent;

    d.    the right to be free from the lodging of false criminal charges against them by police officers;

    e.    the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiffs' favor;

    f.    the right to be free from abuse of process;

    g.    the right to be free from deprivation of liberty without due process of law; and

    h.    the right to equal protection, privileges, and immunities under the laws.

96.    As a direct and proximate result of defendants' deprivation of plaintiffs' constitutional rights, plaintiffs suffered the injuries and damages set forth above.

97.    The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### *Respondeat Superior*

98.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

99.     At all relevant times, defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES were employees of the City and were acting within the scope of their employment.

100.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants NYPD Officers set forth herein.

### THIRD CAUSE OF ACTION

#### Violations of the New York State Constitution

101.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102.    Defendants subjected plaintiffs to the foregoing acts and omissions without due process of law, thereby depriving plaintiffs of rights, privileges, and immunities guaranteed by Article 1, §§ 1, 6, and 12 of the New York State Constitution, including, without limitation, the following:

   a.    Plaintiffs were deprived of their rights and privileges guaranteed by Article 1, § 1 of the New York State Constitution;

   b.    Plaintiffs were deprived of their right to due process guaranteed by Article 1, § 6 of the New York State Constitution; and

   c.    Plaintiffs were deprived of their right to be free from unreasonable searches and seizures guaranteed by Article 1, § 12 of the New York State Constitution.

103.    As a direct and proximate result of defendants' deprivations of plaintiffs' rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiffs suffered the injuries and damages set forth above.

## FOURTH CAUSE OF ACTION
### Assault and Battery

104.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

105.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES without just cause, wilfully and maliciously used physical force against plaintiff causing his injuries.

106.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES illegally seized, handcuffed and arrested plaintiffs without their consent, causing plaintiffs mental anguish, shame, humiliation, disgrace and indignity.  As a result, plaintiffs also suffer from fear of arbitrary, capricious and/or malicious harassment, assault and arrest by NYPD officers.

107.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and/or JOHN and/or JANE DOES illegally caused plaintiffs to be strip searched without their consent, causing plaintiffs pain and suffering, including, without limitation, emotional and physical distress, mental anguish, shame, humiliation, disgrace and indignity.

108.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for plaintiff's rights, and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### False Imprisonment

109.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

14

110.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES through the foregoing acts, caused plaintiffs to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent.

111.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Malicious Prosecution

112.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

113.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES, through the foregoing acts, maliciously commenced a criminal proceeding against plaintiffs, which ended in their favor, without probable cause to believe plaintiffs were guilty of the crimes charged.

114.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

115.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiffs to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

117.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

## EIGTH CAUSE OF ACTION
### Negligence

118.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES owed plaintiffs a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

120.    Defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES, by the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

121.    All of these acts were performed without any negligence on the part of plaintiffs and were the proximate cause of injuries to plaintiffs.

## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

122.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123.    As police officers acting in the performance of their duties, defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES owed plaintiffs a duty of care.

124.    In breach of that duty, defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES foregoing conduct endangered plaintiffs' safety and caused them to fear for their safety.

125.    As a result, plaintiffs suffered emotional distress.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages from defendants NYPD Officers CINTRON, JIMENEZ, BAAITH, and JOHN and/or JANE DOES to the extent allowable by law;

(c)    attorneys fees;

(d)    the costs and disbursements of this action;

(e)    interest; and

(f)    such other and further relief as this Court deems just and proper.

Dated: New York, NY
    June 10, 2013

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

_____
Myron Beldock (MB-4076)
mbeldock@blhny.com

Marc A. Cannan (MC-0513)
mcannan@blhny.com

*Attorneys for Plaintiffs*